# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

In the Matter Of:                          | Case No.

C.N., a minor, by and through her
next friends S.N. and C.B.
Petitioner,

v.

RIVERSIDE COUNTY
DEPARTMENT OF PUBLIC
SOCIAL SERVICES (DPSS),
Respondent.

---

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

---

SKIP FEILD (#221217)
SKIP ALLEN FEILD, APC
6809 Indiana Ave., #153
Riverside, CA 92506
Telephone: (323) 302-4801
Attorney for Next Friends S.N. and C.B.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................iv

NOTICE OF PETITION AND VERIFICATION ..........................................v

JURISDICTION AND VENUE .....................................................................vi

PARTIES ......................................................................................................vii

CUSTODY STATUS AND STANDING...................................................... viii

EXHAUSTION AND REMEDIES ...............................................................ix

INTRODUCTION .........................................................................................1

STATEMENT OF CASE AND FACTS ........................................................1

GROUNDS FOR RELIEF ...........................................................................9

I. DPSS VIOLATED PROCEDURAL DUE PROCESS BY
FAILING TO PROVIDE TIMELY NOTICE OR A MEANINGFUL
OPPORTUNITY TO BE HEARD TO C.N.'S KNOWN
RELATIVES.................................................................................................9

A. Failure to Comply with California Statutes Mandating Relative
Identification and Notification Violated Procedural Due Process ...............11

B. Despite Knowledge of the Grandparents, DPSS Failed to Notify or
Assess Them for Placement .........................................................................15

C.  The Juvenile Court's Orders Were Based on Incomplete and
Misleading Representations .........................................................................17

II. THE STATE ARBITRARILY DENIED RELATIVE
PLACEMENT AND SEVERED FAMILIAL BONDS IN
VIOLATION OF SUBSTANTIVE DUE PROCESS...................................20

A. The Right to Familial Association Was Ignored Without
Justification .................................................................................................20

B. <u>The State's Arbitrary Conduct Shocks the Conscience and Violates Substantive Due Process</u>...................................................................23

PRAYER FOR RELIEF .............................................................24

VERIFICATION ....................................................................25

DECLARATION OF C.B. ..........................................................26

MASTER CHRONOLOGICAL INDEX TO EXHIBITS TO PETITION FOR WRIT ................................................................27

EXHIBIT 1 (Appellant's Opening Brief E083475) ...................................28

EXHIBIT 2 (Respondent's Brief E083475) ................................48

EXHIBIT 3 (Court Opinion E083475)........................................69

EXHIBIT 4 (Case Docket – California Supreme Court case S289206) .... 87

## <u>TABLE OF AUTHORITIES</u>

<u>U.S. SUPREME COURT CASES</u>

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ....................................23

*Mathews v. Eldridge*, 424 U.S. 319 (1976)........................................13, 17, 19

*Moore v. City of East Cleveland*, 431 U.S. 494 (1977) ...........................10, 20

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ...............................................12, 19

*Santosky v. Kramer*, 455 U.S. 745 (1982) .................................................11, 19

*Stanley v. Illinois*, 405 U.S. 645 (1972) ........................................................22

*Troxel v. Granville*, 530 U.S. 57 (2000) ........................................................20

*Washington v. Glucksberg*, 521 U.S. 702 (1997).........................................21


<u>FEDERAL APELLATE AND DISTRICT COURT CASES</u>

*Hootstein v. Collins*, 679 F. Supp. 2d 169 (D. Mass. 2010) ...................12, 13

*Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060 (D. Neb. 2024)......................13

*Mullins v. Oregon*, 57 F.3d 789 (9th Cir. 1995) ...........................................12

*Quinn v. Doherty*, 637 F. Supp. 3d 647 (D. Mass. 2022) ............................12

*Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434 (E.D. Pa.
2010) ...............................................................................................................12


<u>CALIFORNIA STATE COURTS</u>

*In re Joseph T.*, 163 Cal. App. 4th 787 (2008) .............................................14


<u>STATUTES AND CONSTITUTIONAL PROVISIONS</u>

U.S. Const. amend. XIV ................................................................................16

Cal. Welf. & Inst. Code § 309(e)(1) ..........................................................passim

Cal. Welf. & Inst. Code § 361.3(a) .............................................................passim

## NOTICE OF PETITION AND VERIFICATION

To the Honorable Judges of the United States District Court for the Central District of California:

The Petitioner, through her next friends, respectfully petitions for a writ of habeas corpus and avers under penalty of perjury that the following is true and correct to the best of their knowledge.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 2254(a), as the petitioner is in the custody of the State of California following termination of parental rights and placement in the dependency system. Venue is proper under 28 U.S.C. § 2241(d) as the petitioner was adjudicated in Riverside County, within this district.

# PARTIES

Petitioner: C.N., a minor child currently in the custody of the State of California under a juvenile dependency order.

Next Friends: S.N. and C.B., the child's paternal grandparents, who seek relief on her behalf.

Respondent: Riverside County Department of Public Social Services (DPSS), a county agency exercising custody over the petitioner.

## CUSTODY STATUS AND STANDING

C.N. remains in the custody of the State under juvenile court jurisdiction, and adoption has not, to Petitioners' knowledge, been finalized. The grandparents have standing to file as "next friends" under *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990), as they have a significant pre-existing relationship with C.N. and act in good faith to vindicate her constitutional rights.

## EXHAUSTION OF REMEDIES

Petitioner has exhausted all available state court remedies. A direct appeal was taken to the California Court of Appeal (Fourth District, Division Two), and a Petition for Review was denied by the California Supreme Court on April 2, 2025.

## <u>INTRODUCTION</u>

Petitioner C.N., a minor child, through her next friends and paternal grandparents S.N. and C.B., respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This petition challenges the unconstitutional deprivation of C.N.'s federal rights by the State of California and the Riverside County Department of Public Social Services (DPSS), specifically her rights to procedural and substantive due process under the Fourteenth Amendment.

At the heart of this petition is the state's failure to notify or consider known, available relatives for placement in accordance with California law (Cal. Welf. & Inst. Code §§ 309, 361.3), which resulted in the severance of familial bonds and placement with unrelated caregivers despite the grandparents' prior relationship with the child.

## STATEMENT OF THE CASE AND FACTS[1]

### *Procedural Background*

On October 8, 2020, an Out of Custody/ Initial Hearing was held, and the juvenile court found prima facie findings as to the

---

[1] The Statement of Case and Facts are derived from the Appellant's Opening Brief in case E083475, attached hereto as Exhibit 1.

allegations against the parents. (1CT 25.) C.N. was left in the care of
the parents with conditions. (1CT 25.)

On November 3, 2020, the social worker interviewed Father.
(1CT 25.) During Father's interview, the social worker asked Father if
he had any relatives to consider for placement if he could not continue
to care for C.N. (1CT 25.) Father informed the social worker of the
Paternal Grandparents' names but chose not to discuss placement or
provide the Department with the Paternal Grandparents or any other
relatives' contact
information. (1CT 25.)

On December 22, 2021, C.N. was placed in a confidential
licensed foster home in Riverside County. (1CT 23.) On December
23, 2020, the juvenile court sustained the allegations against the
parents and C.N. was adjudged a dependent of the juvenile court.
(1CT 25.) The juvenile court ordered family reunification services for
Father but denied services for
Mother. (1CT 25.)

On April 20, 2021, C.N. was moved to a certified foster family
agency through Sheltering Palms. (1CT 25.) On May 27, 2021, a
report was filed for the six-month status review hearing indicating that

Father wanted C.N. to be placed with the Paternal Grandmother if he could not reunify with C.N. (1CT 26.) Father did not provide the Paternal Grandmother's contact information. (1CT 26.)

On June 8, 2021, the Court continued family reunification services for Father. (1CT 26.) On December 22, 2021, C.N. was moved and placed with another foster family through Family Health and Support Network FFA. (1CT 26.) On March 10, 2022, at the contested status review hearing, the juvenile court terminated family reunification services for

Father. (1CT 26.)

On March 22, 2022, Father was interviewed regarding relative placement issues. (1CT 26.) Father stated that he had no relatives to be considered for placement of C.N. (1CT 26.) Father stated that he and the Paternal Grandmother planned to move into a home together in Palm Springs, California. (1CT 26.)

On April 12, 2022, at a hearing regarding placement, the juvenile court found that Paternal Grandparents were not mentioned in the report as being contacted as a possible placement for C.N. because Father did not provide their contact information. (1CT 26.) The Paternal Grandparents had not requested placement of C.N. (1CT 26.)

3

On January 20, 2023, the juvenile court terminated parental rights. (1CT 26.) The juvenile court designated C.N.'s caregivers as her prospective adoptive parents. (1CT 26.)

### *Contact Between the Department and the Paternal Grandparents*

On June 1, 2023, Paternal Grandparents' Attorney called the social worker and asked about placement and visitation rights for the Paternal Grandparents. (1CT 26.) The Department stated that C.N.'s prospective adoptive parents were fine with contact starting out slow, by written communication via emails or their Google phone number and sending pictures. (1CT 27.) The prospective adoptive parents were not comfortable with in-person visitation until C.N.'s adoption was finalized. (1CT 27.) The Paternal Grandparents' Attorney indicated that that was not good enough because the Paternal Grandparents wanted C.N. to be placed with them. (1CT 27.)

On December 11, 2023, and December 12, 2023, the Paternal Grandmother left messages stating that she wanted C.N. to be placed with her. (1CT 27.) The social worker told the Paternal Grandmother the same thing they told the Paternal Grandparents' Attorney. (1CT 27.) The Paternal Grandmother indicated that her attorney did not

contact her to communicate that information. (1CT 27.) The Paternal Grandmother stated that she had had contact with Father during the entirety of C.N.'s case. (1CT 27.) On December 14, 2023, the Department sent the Paternal Grandmother three current pictures of C.N. (1CT 27.)

The social worker reported that during the time C.N. was in foster care, the Paternal Grandparents did not request to be assessed for placement. (1CT 28.) The social worker stated that because the Paternal Grandmother had contact with Father, she should have been informed that Father was no longer in reunification with C.N. and that C.N. was in the adoption process. (1CT 28.) C.N. had also developed a strong attachment to her prospective adoptive parents and their family. (1CT 29.)

### *Request to Change the Court's Order*

On January 22, 2024, the attorney for the Paternal Grandparents filed a Request to Change a Court Order. (1CT 4.) The Paternal Grandparents requested to change the termination of relative visitation/custody and the termination of parental rights to the extent it

terminated their rights. (1CT 5.) The Paternal Grandparents wrote that they were never advised that C.N. might be adopted, and they were not given the opportunity to be considered for adoption. (1CT 5.)

The Paternal Grandparents requested that the juvenile court allow them to be considered for adoption and allow them to have extended visitation and custody. (1CT 5.) They wrote that this would be better for C.N. because she had already been in their home, and having a continued relationship would benefit her because of her family history. (1CT 5.)

The Paternal Grandparents reported living in their Palos Verdes home for over 20 years. (1CT 7.) They visited C.N. prior to Children and Family Services involvement and visited her periodically after the petition was filed. (1CT 7.) The Paternal Grandparents stated that the social worker told them that C.N. could be placed with them when they asked about visitation. (1CT 7.) The Paternal Grandparents were initially told that the plan was to return C.N. to her parents. (1CT 7.)

They were never notified of the juvenile court proceedings regarding relative placement or adoption. (1CT 7.) They acknowledged that C.N. was in the process of being adopted and

wanted to be considered for adoption, but if adoption was not

possible, they wanted regular visitation

and extended visits with C.N. (1CT 7.) A hearing was set for February

20, 2024. (1CT 13.)

***Hearing on Request to Change the Court's Order, February 20,
2024***

On February 14, 2024, the Department of Public Social

Services (DPSS) recommended that C.N. remain with her prospective

adoptive parents, that the permanent plan of adoption remain, and that

the juvenile court deny the Paternal Grandparents' Request to change

the juvenile court's order. (1CT 22.)

The Paternal Grandparents' attorney provided an offer of proof

that the Paternal Grandparents were never contacted by the

Department

regarding the placement of C.N., but they did visit her. (1RT 8.) When

they visited, signed in with their address and phone number. (1RT 8-

9.)  They were unaware of what was happening, even though they had

contact

with Father. (1RT 8.) They knew there was a case, but no one advised

them that they could apply for placement. (1RT 9.) The Paternal

Grandparents knew the juvenile court terminated Father's parental rights but thought the Appellate Court would handle that issue. (1RT 8.)

The Paternal Grandparents indicated that if C.N.'s placement did not work out and the juvenile court did not make any new orders, they would like to be considered for placement. (1RT 8.) The Paternal Grandparents requested that the juvenile court modify the prior order and have them evaluated for placement. (1RT 8.)

The juvenile court denied the Paternal Grandparents' motion. (1CT 37.) The juvenile court ordered the Department to assist the Paternal Grandparents, and communicate with them about potential visitation to facilitate visits. (1CT 38.) The juvenile court indicated that C.N.'s prospective adoptive parents were not ordered to participate in visitation. (1RT 10.) The juvenile court ordered the Department to contact Paternal Grandparents to advise them and facilitate visitation if C.N.'s adoption with her prospective adoptive parents were to fall through. (1 CT 38.)

***Appellate Review***

On March 11, 2024, Paternal Grandparents filed a timely Notice of Appeal. (1 CT 39.) On December 12, 2024, the Fourth

District Court of Appeal affirmed the lower court's denial of the

Paternal Grandparents' section 388 petition. (Exhibit 3 – Opinion

E083475– Fourth District Court of Appeal.) On April 2, 2025, the

California Supreme Court denied the Paternal Grandparents' Petition

for Review. (Exhibit 4 – Case Docket – California Supreme Court

case S289206.)

## GROUNDS FOR RELIEF

I.  <u>DPSS VIOLATED PROCEDURAL DUE PROCESS BY
FAILING TO PROVIDE TIMELY NOTICE OR A
MEANINGFUL OPPORTUNITY TO BE HEARD TO C.N.'S
KNOWN RELATIVES</u>

The Department's failure to notify or assess C.N.'s paternal

grandparents for placement constituted a deprivation of liberty

interests protected by the Fourteenth Amendment's Due Process

Clause. The Department was required under both state law and

constitutional principles to identify and notify available relatives for

possible placement. It failed to do so despite knowing of the

grandparents' existence and willingness to care for C.N. The juvenile

court, in turn, relied on this incomplete information when making

placement and permanency decisions, ultimately resulting in the

unjustified severance of familial bonds.

Courts have long recognized that the relationship between a child and her relatives, particularly grandparents with a longstanding bond, is a protected bond. See *Moore v. City of East Cleveland*, 431 U.S. 494, 503–04 (1977) (plurality opinion) (striking down zoning ordinance that separated extended family, emphasizing the Constitution protects familial living arrangements beyond the nuclear family). The fundamental requirements of due process in such settings include timely notice and a meaningful opportunity to be heard. See *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981) (due process applies to termination proceedings involving fundamental rights).

Furthermore, courts have found that state-created procedures for relative placement under statutes like California Welfare and Institutions Code §§ 309 and 361.3 create entitlements that, when disregarded, may give rise to constitutional claims. See *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (removal of child from mother's care without proper procedures violated due process); *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir.

10

2000) (child's and relatives' interests in family association require procedural safeguards).

These failures collectively amount to a violation of procedural due process, entitling Petitioner to relief.

A. Failure to Comply with California Statutes Mandating Relative Identification and Notification Violated Procedural Due Process

C.N. and her paternal grandparents were deprived of their liberty interests without due process when DPSS failed to provide timely notice or a meaningful opportunity to be heard. These failures violated sections 309(e)(1) and 361.3(a), which require child welfare agencies to diligently identify and contact relatives for placement. These statutory mandates are designed to protect a child's right to family association and avoid unnecessary separation from known, available relatives.

Under *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), any proceedings involving the potential termination of family rights must satisfy the requirement of fundamentally fair procedures. The Court emphasized that parents and children share a vital interest in preventing the erroneous termination of their natural relationship, a principle that extends to grandparents with a close familial bond.

Similarly, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), held that due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

Federal courts have addressed analogous due process challenges by grandparents with mixed conclusions. *In Quinn v. Doherty*, 637 F. Supp. 3d 647, 653–55 (D. Mass. 2022), the court acknowledged that familial relationships between grandparents and grandchildren may receive constitutional protection under certain circumstances. However, other courts, such as in *Rees v. Office of Children & Youth*, 744 F. Supp. 2d 434, 451 (E.D. Pa. 2010), have found that grandparents lack a federal due process right to custody or visitation. In *Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995), the Ninth Circuit held that grandparents do not possess a fundamental interest in the adoption of their grandchildren, citing the state's compelling interest in timely adoptions.

Yet, none of these cases involved omissions as egregious as those here, where the grandparents were known, had an existing relationship with the child, and were willing to take placement, but were entirely bypassed without evaluation. In *Hootstein v. Collins*, 679 F. Supp. 2d 169, 177 (D. Mass. 2010), the court emphasized that

the existence and use of procedural mechanisms may determine whether due process was satisfied. Unlike in *Hootstein*, the grandparents here were denied access to any such procedures, and state statutory mechanisms were effectively withheld. Likewise, *Jeremiah M. v. Crum*, 695 F. Supp. 3d 1060, 1071 (D. Neb. 2024), addressed enforceability under the Indian Child Welfare Act (ICWA), but did not involve state mandates as specific and prescriptive as California's Welfare and Institutions Code.

These failures collectively amount to a violation of procedural due process under the Fourteenth Amendment. As recognized in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), courts must balance (1) the private interest at stake, (2) the risk of erroneous deprivation through current procedures, and (3) the probable value of additional safeguards. Here, each factor weighs heavily in favor of greater procedural protections for both the child and the grandparents. The interests in maintaining family unity were profound, and the risk of erroneous exclusion was high due to the Department's failure to follow clear statutory requirements.

These federal principles are reinforced by California law. Section 309(e)(1) obligates social workers to investigate and contact

known relatives within 30 days of a child's removal. Section 361.3(a)

requires both the court and child welfare agency to give preferential

consideration to relatives in placement decisions. In *In re Joseph T.*,

163 Cal. App. 4th 787, 797–98 (2008), the court recognized that

failure to conduct a relative assessment under section 361.3 may

violate both statutory and constitutional rights.

Here, DPSS knew of the grandparents' existence as early as

2020, yet failed to initiate contact or assess them for placement. Even

after the grandparents affirmatively reached out, they were informed

they were "too late" despite never having been told of their right to be

considered or the timeline for relative assessments. These omissions

frustrated the purpose of the statutory scheme and deprived C.N. and

her grandparents of the basic constitutional safeguards designed to

preserve familial bonds.

In this case, the interests of both the child and her grandparents

in maintaining a familial relationship were profound, and the risk of

erroneous deprivation was high given the Department's failure to

comply with statutory mandates. Simple procedural steps, like timely

notice and an assessment, would have dramatically reduced the

likelihood of constitutional harm. Their omission warrants habeas relief.

 B. <u>Despite Knowledge of the Grandparents, DPSS Failed to Notify or Assess Them for Placement</u>

Although DPSS was aware of the paternal grandparents' existence as early as 2020, it failed to take even the most basic steps to fulfill its statutory and constitutional obligations. At no point did the Department attempt to contact the grandparents, assess their home for placement suitability, or notify them of the ongoing dependency proceedings. Instead, DPSS relied on the father's refusal to voluntarily provide their contact information, despite clear evidence that the grandparents maintained a close and continuous relationship with C.N., including in-person visits and repeated expressions of willingness to provide care.

On multiple occasions throughout the dependency proceedings, the father affirmatively referenced his parents' desire and ability to take placement. Nevertheless, DPSS failed to investigate or follow up, even though the agency could have identified and reached the grandparents through minimal diligence. California law expressly requires child welfare agencies to conduct such inquiries. See Welf. &

Inst. Code §§ 309(e)(1), 361.3(a). Despite these mandates, the Department remained inactive, and by the time it acknowledged the grandparents' existence, the case had progressed significantly. The juvenile court had already accepted the agency's misleading representations that no relatives were available or had expressed interest in placement.

When the grandparents eventually learned of the proceedings and attempted to assert their rights, including through retained counsel, they were informed that it was too late. This response came despite the fact that the grandparents had never been given formal notice of their right to be considered for placement, nor any explanation of the process or deadlines for doing so. The Department's failure to act deprived the grandparents of a meaningful opportunity to be heard and prevented the court from having a complete and accurate record on which to base placement decisions.

As a result, the dependency process lacked the fundamental fairness required by due process. The court was misled into making decisions without critical information, and the grandparents were denied procedural protections afforded by both California law and the United States Constitution. The situation was further exacerbated

when DPSS failed to respond meaningfully even after being contacted by the grandparents' attorney, compounding the initial errors and omissions.

As the Supreme Court recognized in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), procedural due process requires balancing the private interest affected, the risk of erroneous deprivation under current procedures, and the probable value of additional safeguards. Here, the interests of both the child and her grandparents in preserving their familial bond were substantial. The risk of erroneous deprivation was significant given the Department's failure to comply with statutory mandates. Simple procedural steps, including timely notice and a basic relative assessment, would have significantly reduced that risk. The absence of those steps led to a process that was fundamentally unfair and constitutionally deficient.

C. The Juvenile Court's Orders Were Based on Incomplete and Misleading Representations

The juvenile court's findings and orders were based on an incomplete and inaccurate record shaped by DPSS's omissions. The court accepted at face value the agency's representation that the paternal grandparents had not expressed interest in placement or

visitation. In reality, the grandparents had maintained a relationship with C.N., had visited her in person, and had expressed interest in placement on multiple occasions, including through retained counsel. Despite this, the court relied on DPSS's claims without requiring any documentation of efforts to identify, contact, or assess the grandparents.

This reliance on unverified and misleading statements denied the family their procedural due process rights. The grandparents were never provided with notice of their rights under California law or an opportunity to be considered for placement in accordance with statutory requirements. Sections 309(e)(1) and 361.3(a) require child welfare agencies to exercise due diligence in identifying and evaluating relatives for placement early in the dependency process. These statutory duties are designed to safeguard a child's right to familial association and to ensure that relatives are considered before irreversible decisions are made.

The failure to inform the grandparents of their rights or to assess their suitability for placement deprived both them and C.N. of meaningful participation in the dependency proceedings. The harm was compounded by the juvenile court's reliance on incomplete

agency representations, rather than evidence of actual compliance with legal mandates. This undermined the integrity of the proceedings and resulted in a significant deprivation of rights protected by both California law and the United States Constitution.

Courts have long recognized that the failure to provide notice and an opportunity to be heard in family-related proceedings implicates core due process concerns. In *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), the Supreme Court emphasized that proceedings affecting parental rights must be fundamentally fair. In *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), the Court reiterated that due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

The court's acceptance of DPSS's assertion that no relatives were available was not merely a procedural oversight. It was a material misrepresentation that obscured the grandparents' efforts and interests, and ultimately influenced critical placement decisions. As in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the relevant factors for evaluating a due process violation include the private interest at stake, the risk of erroneous deprivation through the procedures used, and the value of additional safeguards. Each factor weighs in favor of

the grandparents and C.N., who were deprived of a fair and accurate

process. Timely notice and an objective assessment of the

grandparents would have added significant value to the court's

decision-making and reduced the risk of harm. The absence of these

basic procedural protections rendered the process constitutionally

inadequate.

## II.  THE STATE ARBITRARILY DENIED RELATIVE PLACEMENT AND SEVERED FAMILIAL BONDS IN VIOLATION OF SUBSTANTIVE DUE PROCESS

The actions of DPSS and the juvenile court infringed on C.N.'s

fundamental liberty interest in maintaining her familial bonds without

adequate justification. Family integrity is a constitutionally protected

interest, and state interference with that right must satisfy heightened

scrutiny under the Due Process Clause.

### A. The Right to Familial Association Was Ignored Without Justification

The U.S. Supreme Court has consistently affirmed that the

integrity of the family unit is a fundamental liberty interest protected

by the Fourteenth Amendment. See *Troxel v. Granville*, 530 U.S. 57,

65 (2000) (noting the fundamental right of parents to make decisions

concerning the care, custody, and control of their children); *Moore v.*

*City of East Cleveland*, 431 U.S. 494, 499 (1977) (holding that extended family relationships are protected by the Constitution). These cases make clear that familial association is not limited to the parent-child dyad but extends to grandparents when their relationship with the child is significant and long-standing.

In this case, the record demonstrates that C.N. maintained an ongoing relationship with her grandparents throughout the dependency proceedings. The grandparents were known to the agency, maintained contact with the child's father, and made multiple efforts to assert their interest in visitation and placement. These factors establish more than a speculative or attenuated bond—they reflect an existing familial relationship entitled to constitutional protection.

Government interference with such protected relationships must be supported by a compelling state interest and must be narrowly tailored to achieve that interest. See *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Yet, here, no such analysis occurred. The agency did not assess the grandparents for placement or visitation. It failed to conduct even a basic home study or evaluate their capacity to provide care. The juvenile court accepted the agency's omissions

without scrutiny and issued orders that effectively terminated the grandparent-grandchild relationship.

Moreover, the State failed to consider less restrictive alternatives to total denial of placement and visitation. Options such as supervised contact, monitored visitation, or kinship guardianship were not evaluated or even acknowledged on the record. This wholesale disregard for the grandparents' role in C.N.'s life is constitutionally infirm.

The Supreme Court's emphasis on individualized determinations and procedural safeguards in cases involving family integrity underscores the deficiency here. See *Stanley v. Illinois*, 405 U.S. 645, 658 (1972) (holding that the State may not deprive a parent of custody based on a presumption without individualized findings). The failure to make any findings about the grandparents' fitness, or C.N.'s best interest as it related to maintaining that relationship, renders the termination of familial contact constitutionally unsound. Accordingly, the State's failure to consider or preserve C.N.'s familial relationship with her grandparents, in light of their established bond and statutory preference under state law, violated the substantive protections afforded by the Fourteenth Amendment.

B.  <u>The State's Arbitrary Conduct Shocks the Conscience</u>
    <u>and Violates Substantive Due Process</u>

Substantive due process also prohibits government conduct that is arbitrary or shocks the conscience. See *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In this case, DPSS's refusal to notify or assess the grandparents despite repeated contact, known familial ties, and expressions of interest in placement demonstrates a disregard for basic constitutional protections.

The failure to act was not based on a considered assessment of C.N.'s best interest but on bureaucratic inertia and resistance to family reunification efforts. No evidence was presented that the grandparents were unfit, and no procedural steps were taken to evaluate them. This conduct deprived C.N. of her right to maintain familial relationships without any rational or compelling justification.

Together, these failures constitute a violation of substantive due process under the Fourteenth Amendment, and habeas relief is warranted to prevent further constitutional harm.

For the foregoing reasons, the Court should grant the writ.

Submitted by,

Date: 7/2/2025 _____

_____
ID JZqcZ7GYqrk4dzJZR6GcuiHg

SKIP FEILD, ESQ.
ATTORNEY FOR NEXT FRIENDS

## PRAYER FOR RELIEF

Petitioner respectfully requests that this Court:

1. Issue a writ of habeas corpus finding that Petitioner's constitutional rights were violated;

2. Order an evidentiary hearing to determine the extent of the violations and best interest of the child;

3. Remand to the state juvenile court with directions to reconsider placement in light of these constitutional findings;

4. Grant such other and further relief as the Court deems just and proper.

**VERIFICATION**

I, C.B., declare under penalty of perjury under the laws of the United States and the State of California that I am the paternal grandmother of C.N., the minor petitioner in this action, and one of her next friends; that I have read the foregoing petition and know the contents thereof; and that the same is true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Executed on ___6/30/2025___, at ___Rancho Palos Verdes___, California.


_____
C.B.
Next Friend of Petitioner C.N.

## DECLARATION OF C.B.

I, C.B., declare as follows:

1.  I am the paternal grandmother of C.N. and have maintained a close
    and loving relationship with her since early childhood.

2.  I attempted to seek information about the status of C.N.'s adoption
    after the California Supreme Court denied the Petition for Review.

3.  I contacted DPSS regarding C.N.'s case in June 2024 to inquire
    whether the adoption had been finalized.

4.  The social worker was evasive and refused to give me a clear
    answer.

5.  Based on the agency's refusal to confirm finalization, I believe
    adoption has not yet been finalized and C.N. remains under
    dependency court jurisdiction.

6.  I am filing this declaration in support of the federal habeas petition
    brought on behalf of my granddaughter.

I declare under penalty of perjury under the laws of the United States
and the State of California that the foregoing is true and correct.

Executed on ___6/30/2025___, at ___Rancho Palos Verdes___, California.

_____
C.B.
Next Friend of Petitioner C.N.

## MASTER CHRONOLOGICAL INDEX TO EXHIBITS TO PETITION FOR WRIT

| Exh. No. | Description | Date | Page No. |
|---|---|---|---|
| 1 | Appellant's Opening Brief E083475 | July 22, 2024 | 28 |
| 2 | Respondent's Brief E083475 | August 21, 2024 | 48 |
| 3 | Court Opinion E083475 | December 12, 2024 | 69 |
| 4 | Case Docket – California Supreme Court case S289206 | April 2, 2025 | 87 |

EXHIBIT 1
Appellant's Opening Brief E083475

# IN THE COURT OF APPEAL, THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | | |
|---|---|---|
| IN RE C.N, | ) | Appellate No: E083475 |
| | ) | |
|     Person Coming Under the | ) | |
|     Juvenile Court Law | ) | Superior Court No. |
| | ) | INJ1900247 |
| | ) | |
| RIVERSIDE COUNTY | ) | |
| DEPARTMENT OF CHILDREN | ) | |
| AND FAMILY SERVICES | ) | |
|     Petitioner/Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| S.N. and C.B. | ) | |
| Objector/Appellant. | ) | |

APPEAL FROM ORDERS OF JUVENILE COURT OF RIVERSIDE

Honorable Judge Elizabeth Tucker

APPELLANT'S OPENING BRIEF

LAUREN K. JOHNSON,
(SBN 229699)
19200 Von Karman Ave. Ste #600
Irvine, CA 92612

(949) 622-5522

Attorney for Appellants S.N. and C.B.

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS .......................................................................... 2

TABLE OF AUTHORITIES ..................................................................... 3

STATEMENT OF FACTS/PROCEDURAL HISTORY ............................ 4

    *Procedural Background* ..................................................................... 4

    *Contact Between the Department and the Paternal Grandparents* ... 6

    *Request to Change the Court's Order* ............................................... 7

    *Hearing on Request to Change the Court's Order, February 20,*
    *2024* ................................................................................................. 9

STATEMENT OF APPEALABILITY ..................................................... 10

ARGUMENT......................................................................................... 10

I.    THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT
    DENIED MOTHER'S SECTION 388 PETITION ......................... 10

    A.    Requirement of a Section 388 Petition ................................. 10

    B.    Standard of Review ............................................................. 11

    C.    A Prima Facie Showing of Changed Circumstances Was
        Demonstrated..................................................................... 11

        1.    DPSS's Failure to Comply with Section 309 ............ 13

    D.    The Paternal Grandparents Made a Prima Facie Showing That
        It Was in the Child's Best Interests for the Juvenile Court to
        Change the Order Regarding Custody................................. 15

CONCLUSION..................................................................................... 17

CERTIFICATE OF WORD COUNT ....................................................... 18

DECLARATION OF SERVICE.............................................................. 19

2

# TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*In re Edward R.* (1993) 12 Cal.App.4th 116 ............................................... 17

*In re Heather B.* (1992) 9 Cal.App.4th 535 ............................................... 17

*In re Heather P.* (1989) 109 Cal.App.3d 886 ............................................. 11

*In re Marilyn H.* (1993) 5 Cal.4th 295 ................................................. 11, 17

*In re Mickel O.* (2011) 197 Cal.App.4th 586 .............................................. 11

*In re Stephanie M.* (1994) 7 Cal.4th 295 .................................................. 11

*In re Tabatha G.* (1996) 45 Cal.App.4th 1159 ........................................... 17

### STATUTES

Welfare and Institutions Section 309 ................................................. passim

Welfare and Institutions Section 309, subdivision (e)(1) .................... 13, 14

Welfare and Institutions Section 309, subdivision (e)(3) .......................... 13

Welfare and Institutions Section 319, subdivision (h)(2) .......................... 13

Welfare and Institutions Section 358, subdivision (b)(2) .......................... 14

Welfare and Institutions Section 358, subdivision (b)(3) .......................... 15

Welfare and Institutions Section 388 ........................................10, 11, 16, 17

Welfare and Institutions Section 388, subdivision (a) ....................10, 11, 16

Welfare and Institutions Section 395 ...................................................... 10

### RULES

California Rules of Court, rule 5.534(b)(3) ............................................... 14

California Rules of Court, rule 5.570 (a) ................................................... 11

California Rules of Court, rule 5.585 (b) ................................................... 10

California Rules of Court, rule 5.695(e)(2) ......................................... 15, 17

California Rules of Court, rule 5.695(f) .................................................... 15

California Rules of Court, rule 8.204(c) .................................................... 18

3

# IN THE COURT OF APPEAL, THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | | |
|---|---|---|
| IN RE C.N, | ) | Appellate No: E083475 |
| | ) | |
| Person Coming Under the | ) | |
| Juvenile Court Law | ) | Superior Court No. |
| | ) | INJ1900247 |
| | ) | |
| RIVERSIDE COUNTY | ) | |
| DEPARTMENT OF CHILDREN | ) | |
| AND FAMILY SERVICES | ) | |
| Petitioner/Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| S.N. and C.B. | ) | |
| Objector/Appellant. | ) | |

## STATEMENT OF FACTS/PROCEDURAL HISTORY

***Procedural Background***

On October 8, 2020, an Out of Custody/ Initial Hearing was held, and the juvenile court found prima facie findings as to the allegations against the parents. (1CT 25.) C.N. was left in the care of the parents with conditions. (1CT 25.)

On November 3, 2020, the social worker interviewed Father. (1CT 25.) During Father's interview, the social worker asked Father if he had any relatives to consider for placement if he could not continue to care for C.N. (1CT 25.) Father informed the social worker of the Paternal Grandparents' names but chose not to discuss placement or provide the

4

Department with the Paternal Grandparents or any other relatives' contact information.  (1CT 25.)

On December 22, 2021, C.N. was placed in a confidential licensed foster home in Riverside County.  (1CT 23.)  On December 23, 2020, the juvenile court sustained the allegations against the parents and C.N. was adjudged a dependent of the juvenile court.  (1CT 25.)  The juvenile court ordered family reunification services for Father but denied services for Mother.  (1CT 25.)

On April 20, 2021, C.N. was moved to a certified foster family agency through Sheltering Palms.  (1CT 25.)  On May 27, 2021, a report was filed for the six-month status review hearing indicating that Father wanted C.N. to be placed with the Paternal Grandmother if he could not reunify with C.N.  (1CT 26.)  Father did not provide the Paternal Grandmother's contact information.  (1CT 26.)

On June 8, 2021, the Court continued family reunification services for Father.  (1CT 26.)  On December 22, 2021, C.N. was moved and placed with another foster family through Family Health and Support Network FFA.  (1CT 26.)  On March 10, 2022, at the contested status review hearing, the juvenile court terminated family reunification services for Father.  (1CT 26.)

On March 22, 2022, Father was interviewed regarding relative placement issues.  (1CT 26.)  Father stated that he had no relatives to be

5

considered for placement of C.N.  (1CT 26.)  Father stated that he and the Paternal Grandmother planned to move into a home together in Palm Springs, California.  (1CT 26.)

On April 12, 2022, at a hearing regarding placement, the juvenile court found that Paternal Grandparents were not mentioned in the report as being contacted as a possible placement for C.N. because Father did not provide their contact information.  (1CT 26.)  The Paternal Grandparents had not requested placement of C.N.  (1CT 26.)

On January 20, 2023, the juvenile court terminated parental rights. (1CT 26.)  The juvenile court designated C.N.'s caregivers as her prospective adoptive parents.  (1CT 26.)

### Contact Between the Department and the Paternal Grandparents

On June 1, 2023, Paternal Grandparent's Attorney called the social worker and asked about placement and visitation rights for the Paternal Grandparents.  (1CT 26.)  The Department stated that C.N.'s prospective adoptive parents were fine with contact starting out slow, by written communication via emails or their Google phone number and sending pictures.  (1CT 27.)  The prospective adoptive parents were not comfortable with in-person visitation until C.N.'s adoption was finalized.  (1CT 27.) The Paternal Grandparent's Attorney indicated that that was not good enough because the Paternal Grandparents wanted C.N. to be placed with them. (1CT 27.)

6

On December 11, 2023, and December 12, 2023, the Paternal Grandmother left messages stating that she wanted C.N. to be placed with her. (1CT 27.) The social worker told the Paternal Grandmother the same thing they told the Paternal Grandparent's Attorney. (1CT 27.) The Paternal Grandmother indicated that her attorney did not contact her to communicate that information. (1CT 27.) The Paternal Grandmother stated that she had had contact with Father during the entirety of C.N.'s case. (1CT 27.) On December 14, 2023, the Department sent the Paternal Grandmother three current pictures of C.N. (1CT 27.)

The social worker reported that during the time C.N. was in foster care, the Paternal Grandparents did not request to be assessed for placement. (1CT 28.) The social worker stated that because the Paternal Grandmother had contact with Father, she should have been informed that Father was no longer in reunification with C.N. and that C.N. was in the adoption process. (1CT 28.) C.N. had also developed a strong attachment to her prospective adoptive parents and their family. (1CT 29.)

### *Request to Change the Court's Order*

On January 22, 2024, the attorney for the Paternal Grandparents filed a Request to Change a Court Order. (1CT 4.) The Paternal Grandparents requested to change the termination of relative visitation/custody and the termination of parental rights to the extent it terminated their rights. (1CT 5.) The Paternal Grandparents wrote that

7

they were never advised that C.N. might be adopted, and they were not given the opportunity to be considered for adoption.  (1CT 5.)

The Paternal Grandparents requested that the juvenile court allow them to be considered for adoption and allow them to have extended visitation and custody.  (1CT 5.)  They wrote that this would be better for C.N. because she had already been in their home, and having a continued relationship would benefit her because of her family history.  (1CT 5.)

The Paternal Grandparents reported living in their Palos Verdes home for over 20 years. (1CT 7.)  They visited C.N. prior to Children and Family Services involvement and visited her periodically after the petition was filed.  (1CT 7.)  The Paternal Grandparents stated that the social worker told them that C.N. could be placed with them when they asked about visitation.  (1CT 7.)  The Paternal Grandparents were initially told that the plan was to return C.N. to her parents.  (1CT 7.)

They were never notified of the juvenile court proceedings regarding relative placement or adoption.  (1CT 7.)  They acknowledged that C.N. was in the process of being adopted and wanted to be considered for adoption, but if adoption was not possible, they wanted regular visitation and extended visits with C.N.  (1CT 7.)  A hearing was set for February 20, 2024.  (1CT 13.)

### *Hearing on Request to Change the Court's Order, February 20, 2024*

On February 14, 2024, the Department of Public Social Services (DPSS) recommended that C.N. remain with her prospective adoptive parents, that the permanent plan of adoption remain, and that the juvenile court deny the Paternal Grandparents' Request to change the juvenile court's order.  (1CT 22.)

The Paternal Grandparents' attorney provided an offer of proof that the Paternal Grandparent were never contacted by the Department regarding the placement of C.N., but they did visit her.  (1RT 8.)  When they visited, signed in with their address and phone number.  (1RT 8-9.) They were unaware of what was happening, even though they had contact with Father.  (1RT 8.) They knew there was a case, but no one advised them that they could apply for placement.  (1RT 9.)  The Paternal Grandparents knew the juvenile court terminated Father's parental rights but thought the Appellate Court would handle that issue.  (1RT 8.)

The Paternal Grandparents indicated that if C.N.'s placement did not work out and the juvenile court did not make any new orders, they would like to be considered for placement. (1RT 8.)  The Paternal Grandparents requested that the juvenile court modify the prior order and have them evaluated for placement.  (1RT 8.)

The juvenile court denied the Paternal Grandparent's motion.  (1CT 37.)  The juvenile court ordered the Department to assist the Paternal

9

Grandparents, and communicate with them about potential visitation to facilitate visits.  (1CT 38.)  The juvenile court indicated that C.N.'s prospective adoptive parents were not ordered to participate in visitation. (1RT 10.)  The juvenile court ordered the Department to contact Paternal Grandparents to advise them and facilitate visitation if C.N.'s adoption with her prospective adoptive parents were to fall through.  (1CT 38.)

On March 11, 2024, Paternal Grandparents filed a timely Notice of Appeal.  (1CT 39.)

## STATEMENT OF APPEALABILITY

This is an appeal from orders made at section 388 hearing and is authorized by section 395 and California Rules of Court, rule 5.585 (b).

## ARGUMENT

## I.

## THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT DENIED MOTHER'S SECTION 388 PETITION

### A.    Requirement of a Section 388 Petition

Under section 388, subdivision (a), any parent or other person having an interest in a child who is a dependent of the juvenile court may, upon grounds of change of circumstance or new evidence, petition the court for a hearing to change, modify, or set aside any order of court previously made.  "Any… person having an interest in a child … may, upon grounds of change of circumstance or *new evidence*, petition the court in the same

action in which the child was found to be a dependent child of the juvenile

court … for a hearing to change, modify, or set aside any order of court

previously made or to terminate the jurisdiction of the court." (Section

388(a)(1), *emphasis added*.)

A petition for modification shall be liberally construed in favor of its

sufficiency for the granting of a hearing. (California Rule of Court, rule

5.570 (a); *In re Marilyn H*. (1993) 5 Cal.4th 295, 309; *In re Heather P.*

(1989) 109 Cal.App.3d 886.) At a hearing on a section 388 petition, the

burden of proof is on the moving party to show by a preponderance of the

evidence that there is new evidence or changed circumstances that make a

change in the best interests of the child. (*In re Stephanie M*. (1994) 7

Cal.4th 295, 317; *In re Mickel O*. (2011) 197 Cal.App.4th 586, 615.)

**B.    Standard of Review**

The standard of review of the denial of a section 388 petition is

abuse of discretion. (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 317-319.)

**C.    A Prima Facie Showing of Changed Circumstances Was
        Demonstrated**

The first prong of section 388 requires that the petitioning party

show that there has been a change of circumstances or new evidence.

(Welf. & Inst. § 388, subd. (a).) In this case, the Paternal Grandparents

showed that there was new evidence. In their petition and demonstrated

through counsel's offer of proof, they demonstrated that they had

previously spoken with the social worker, discussed placement, and had provided their phone number and address information to the Department when they had visited the child.  (1CT 7; 1RT 8–9.)  This was new evidence that was not previously before the juvenile court when the juvenile court.

At the time of the April 12, 2022, hearing regarding placement, the juvenile court found, based on the representations of the Department, that the Paternal Grandparents were not contacted because Father had not provided their contact information.  (1CT 26.)  However, on February 20, 2024, the juvenile court learned that the Paternal Grandparents had had contact with the Department and even had visitation with C.N. during the pendency of Father's reunification services.  (1CT 7.).

The Paternal Grandparents declared that the social worker told them that C.N. could be placed with them when they asked about visitation but that the plan was to return C.N. to her parents.  (1CT 7.)  In addition, the Paternal Grandparents also provided their contact information in writing when they signed in to the visitation log when they visited the child.  (1CT 7; 1RT 8–9.)  Therefore, the social worker had the ability to contact them prior to the termination of parental rights and regarding placement.  This new evidence was critical because the Department claimed that at the time the juvenile court was deciding whether relative placement could be accomplished, it could not contact the Paternal Grandparents and evaluate placement because it had no contact information for them.

There is no doubt that the Paternal Grandparents made a prima facie showing that there was new evidence.

### 1.    DPSS's Failure to Comply with Section 309

Section 309, subdivision (e)(1) provides that, if a child is removed from parental custody, the social worker must conduct an investigation in order to identify and locate all adult relatives of the child.  The social worker must use "due diligence" in investigating the names and locations of these relatives.  (Section 309, subd. (e)(3).)

"[A]dult relatives" include all grandparents, adult relatives who are "suggested by the parents," and other adults who are "related to the identified child by blood, adoption, or affinity" "within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words 'great,' 'great-great,' or 'grand,' or the spouse of any of these persons."  (*Id.*, subd. (e)(1), §319, subd. (h)(2).)

Section 309, subdivision (e)(1)(A) requires the social worker to provide written notification within 30 days of removal to all adult relatives who are located (with certain exceptions not applicable here) that the child has been removed from parental custody.  Section 309, subdivision (e)(1)(B) requires that the notice include "[a]n explanation of the various options to participate in the care and placement of the child and support for the child's family, including any options that may be lost by failing to respond.  "The social worker must provide written notifications as well as

13

41

"oral notification, in person or by telephone," whenever appropriate.  (*Id.*, subd. (e)(1).)

In addition to the notice set forth in section 309, California Rules of Court, rule 5.534(b)(3) requires the social worker to give any located relative a copy of the "Important Information for Relatives" document as distributed in the Department of Social Services All County Letter No. 09-86, as well as Judicial Council Forms, form JV-285 (Relative Information) and form JV-287 (Confidential Information).  Among other things, form JV-285 asks relatives to identify ways in which they may want to help the child, parents, or social worker, and to provide contact information for other relatives who might be able to help the child.

Section 358, subdivision (b)(2) provides that, if the child is removed from parental custody at the time of disposition, the court "shall make a finding as to whether the social worker has exercised due diligence in conducting the investigation, as required pursuant to paragraph (1) of subdivision (e) of Section 309, to identify, locate, and notify the child's relatives.  "When making this finding, the court may consider examples of due diligence that include, among other things, whether the social worker has (1) obtained information about the location of relatives; (2) reviewed the case file for any information regarding relatives; (3) telephoned, emailed, or visited all identified relatives; (4) asked located relatives for the

14

names and locations of others; and (5) used online search tools. (§ 358, subd. (b)(3)(B)– (F); Cal. Rules of Court, rule 5.695(f)(2)– (6).)

When the court finds the social worker has not used due diligence, the court may order the social worker "to exercise due diligence in conducting an investigation to identify, locate, and notify the child's relatives" and "may require a written or oral report to the court." (Cal. Rules of Court, rule 5.695(e)(2).)

Here, DPSS failed to provide the Paternal Grandparents with the necessary written notification and explanation of the various options to participate in the case. Nor did they exercise due diligence. This was an error which cannot be deemed harmless. The Paternal Grandparents had no sooner opportunity to raise this issue due to DPSS's failure to comply with section 309. Therefore, at a minimum, the matter must be reversed and remanded for the juvenile court to order the Department "to exercise due diligence in conducting an investigation to identify, locate, and notify the child's relatives" and "require a written or oral report to the court." (Cal. Rules of Court, rule 5.695(e)(2).)

**D.      The Paternal Grandparents Made a Prima Facie Showing That It Was in the Child's Best Interests for the Juvenile Court to Change the Order Regarding Custody**

The Paternal Grandparents demonstrated a prima facie showing as to the second prong of section 388, that it was in child's best interest to change the juvenile court's order. (Welf. & Inst. Code § 388, subd. (a).)

15

On February 20, 2024, the juvenile court denied Paternal Grandparents' section 388 petition.  (1CT 37.)  The juvenile court erred when it found mother had not made a prima facie showing of changed circumstances and that it was in the child's best interest to change the placement order since DPSS failed to comply with the requirements of section 309.

Paternal Grandparents made a prima facie showing that placement with them would be better for C.N. because she had already been in their home.  (1CT 5.)  They visited C.N. prior to Children and Family Services involvement and visited her periodically after the petition was filed.  (1CT 7.)  They had a relationship, and continuing it in their placement would benefit C.N. because it would allow her to have her family's history.  (1CT 5.)  Alternatively, as termination of parental rights had already occurred, with that termination so goes the family relationship and relationship with Paternal Grandparents.

The juvenile court seemed to acknowledge the importance of the relationship, despite denying Paternal Grandparents' 388 petition when it ordered the Department to assist the Paternal Grandparents and communicate with them to facilitate visits.  (1CT 38.)  The juvenile court also ordered the Department to contact Paternal Grandparents to advise them and facilitate visitation if C.N.'s adoption with her prospective adoptive parents were to fall through.  (1CT 38.)

16

44

It cannot be disputed that all children need the permanence and stability of a loving home, and that if the parent cannot reunify, adoption would arguably provide the most permanent and stable home. (*In re Marilyn H.*, *supra,* 5 Cal.4th 295, 309; *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164; *In re Edward R.* (1993) 12 Cal.App.4th 116, 122; *In re Heather B.* (1992) 9 Cal.App.4th 535, 546.)  In light of the evidence here, the juvenile court should have found new evidence and the best interest of C.N. compelled a changed placement.  This was necessary because DPSS failed to comply with section 309 and failed "to exercise due diligence in conducting an investigation to identify, locate, and notify the child's relatives" and "require a written or oral report to the court."  (Cal. Rules of Court, rule 5.695(e)(2).)

The juvenile court's failure to do so was an abuse of discretion.

## CONCLUSION

Paternal Grandparents request this Court reverse the juvenile court's orders denying their section 388 petition and remand the matter accordingly.

Dated: July 22, 2024                     Respectfully Submitted

                                         /s/ Lauren K. Johnson
                                         Lauren K Johnson

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing brief complies with California Rules of Court, rule 8.204(c) and contains 3,007 words, including footnotes, according to the word count feature of MS Word the computer program used to prepare this brief.

Dated: July 22, 2024                    Respectfully submitted,
                                        /s/ Lauren K. Johnson
                                        LAUREN K JOHNSON
                                        Attorney for Appellant

Lauren K. Johnson
Attorney at Law
State Bar No. 229699
19200 Von Karman Avenue, 6th Floor                    Court of Appeal No.
Irvine, CA 92612                                                              E083475
Attorney for S.N. and C.B.

## DECLARATION OF SERVICE

     I, the undersigned, declare: I am over the age of eighteen years and not a party to the cause; I am employed in, or am a resident of, the County of Orange, California; where the mailing occurs; and my business address is 19200 Von Karman Avenue, 6th Floor, Irvine, CA 92612.  I caused to be served the **APPELLANT'S OPENING BRIEF** by placing copies thereof in a separate envelope addressed to each addressee in the attached service list. I then sealed each envelope and with the postage thereon fully prepaid, I placed each for deposit in the United States mail, at Irvine California, on July 22, 2024.

     This document was also electronically served to the Office of the County Counsel, Los Angeles Superior Court, and the Court of Appeal through the Court of Appeal (Truefiling) website on July 22, 2024

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on July 22, 2024 Irvine, California.


                                **/s/Lauren K Johnson**
                                  Lauren K Johnson

**SERVICE LIST:**

Office of the County Counsel
3960 Orange St., Fifth Floor
Riverside, CA 92501-367

Honorable Elizabeth Tucker, Judge
Larson Justice Center
Juvenile Division, Dept. 1B
46-200 Oasis Street
Indio, CA 92201

EXHIBIT 2
Respondent's Brief E083475

# COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re C.N.,<br>A Minor Person Coming Under the Juvenile Court Law.<br>———————————————<br><br>RIVERSIDE COUNTY<br>DEPARTMENT OF PUBLIC SOCIAL<br>SERVICES,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>S.N. et al.,<br><br>      Defendants and Appellants.<br>——————————————— | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court of Appeal<br>Case No. **E083475**<br><br>Superior Court<br>INJ1900247<br>(County of Riverside) |

---

## RESPONDENT'S BRIEF

---

APPEAL FROM THE SUPERIOR COURT OF THE COUNTY OF
RIVERSIDE, THE HONORABLE ELIZABETH TUCKER, COMMISSIONER

MINH C. TRAN (SBN 179932)
County Counsel
TERESA K.B. BEECHAM (SBN 251101)
PRABHATH SHETTIGAR (SBN 220352)
Deputy County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501
Telephone: (951) 955-6300
E-Mail: countycounsel@rivco.org

Attorneys for Respondent

Document received by the CA 4th District Court of Appeal Division 2.

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ............................................................. 2

TABLE OF AUTHORITIES ...................................................... 3-4

I.    STATEMENT OF THE CASE AND FACTS ...................... 5

II.    ARGUMENT ....................................................................... 11

    A.    THE TRIAL COURT DID NOT ABUSE ITS
    DISCRETION BY DENYING THE PATERNAL
    GRANDPARENTS' SECTION 388 PETITION ...... 11

III.    CONCLUSION .................................................................... 20

IV.    CERTIFICATE OF WORD COUNT ................................. 20

ocument received by the CA 4th District Court of Appeal Division 2.

# TABLE OF AUTHORITIES

**Page**

CALIFORNIA SUPREME COURT

*In re Caden C.* (2021) 11 Cal.5th 614 ................................13

*In re Stephanie M.* (1994) 7 Cal.4th 295...........................12

CALIFORNIA COURT OF APPEAL

*In re A.K.* (2017) 12 Cal.App.5th 492................................15

*In re Amber M.* (2002) 103 Cal.App.4th 681.....................12

*In re Casey D.* (1999) 70 Cal.App.4th 38...........................13

*In re J.A.* (2019) 43 Cal.App.5th 49 .................................14

*In re Jesse W.* (2001) 93 Cal.App.4th 349 .........................13

*In re Lauren R.* (2007) 148 Cal.App.4th 841 ....................19

*In re Mark C.* (1992) 7 Cal.App.4th 433 ...........................16

*In re Meranda P.* (1997) 56 Cal.App.4th 1143 .................14

*In re Robert L.* (1993) 21 Cal.App.4th 1057......................16

*In re Sarah S.* (1996) 43 Cal.App.4th 274 ........................18

*In re S.J.* (2008) 167 Cal.App.4th 953 ..............................12

*People v. Superior Court* (*Crook*) (1978) 83 Cal.App.3d 335.
......................................................................................*18*

*People v. Foss* (2007) 155 Cal.App.4th 113.......................16

Document received by the CA 4th District Court of Appeal Division 2.

# TABLE OF AUTHORITIES
### *(continued)*

**Page**

STATUTORY AUTHORITY

Welfare and Institutions Code

      Section 309, subdivision (e)(1)..................................16

      Section 309, subdivision (e)(3)(A) ...........................14

      Section 358, subdivision (b)......................................16

      Section 358, subdivision (b)(2) ................................14

      Section 366.26, subdivision (k)................................18

      Section 388 .........................................................12,13

      Section 395 ...............................................................13

OTHER AUTHORITY

California Rules of Court

      Rule 5.695(e)............................................................14

      Rule 8.406(a)(1).......................................................14

Document received by the CA 4th District Court of Appeal Division 2.

# I.

## <u>STATEMENT OF THE CASE AND FACTS</u>

On October 8, 2020, the Riverside County Department of Public Social Services ("Department" or "DPSS") filed an out of custody petition for two-month-old C.N. (1CT 25.)

On November 3, 2020, the father said he did not wish to discuss placement and did not provide the Department with any contact information for the paternal grandparents or any other relatives he would want the child placed with if he were unable to continue to care for the child. (1CT 25.)

On November 10, 2020, the child was detained from both parents. (1CT 25.) At the contested jurisdiction/disposition hearing on December 23, 2020, the trial court found the allegations true, adjudged C.N. a dependent, ordered family reunification services to the father and denied services to the mother. (1CT 25.) The child was placed in foster care. (1CT 25.)

In May 2021, the father said he would like the child placed with the paternal grandmother if he were unable to reunify, but he did not provide any contact information for her. (1CT 26.) The Department placed the child in her current foster home on December 22, 2021. (1CT 26.)

On March 22, 2022, the trial court terminated father's reunification services at the contested twelve-month status review hearing. (1CT 26.) The father reported that he had no relatives to be considered for placement of the child as he and the paternal grandmother planned to move into a home together. (1CT 26.)

Document received by the CA 4th District Court of Appeal Division 2.

On April 12, 2022, a hearing regarding relative placement issues took place. (1CT 26.) The paternal grandparents were not mentioned as a possible placement for the child; there was no record that the paternal grandparents requested placement. (1CT 26.)

On January 20, 2023, at the Welfare and Institutions Code[1] section 366.26 hearing, the trial court terminated parental rights and designated the current caregivers as the prospective adoptive parents. (1CT 26.)

Father filed a notice of appeal from the order terminating parental rights. Father's appellate counsel stated she did not identify any issues to raise and advised father of the same. On November 27, 2023, This Court issued an Order granting father 30 days to show good cause that an arguable issue exists. Father did not establish good cause. Therefore, on January 3, 2024, This Court issued an Order dismissing the appeal as abandoned.

On June 1, 2023, counsel for the paternal grandparents asked the Department about placement and visitation for the paternal grandparents. (1CT 26.) The Department's social worker spoke with the prospective adoptive parents who indicated that they were fine allowing some contact, but were not comfortable with in-person visits. (1CT 27.) Counsel for the paternal grandparents stated that this was not sufficient, given that the paternal grandparents wanted placement of the child. (1CT 27.) Counsel said he would discuss the situation with them. (1CT 27.)

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

Document received by the CA 4th District Court of Appeal Division 2.

On December 11 and 12 of 2023, the paternal grandmother left messages with the social worker stating that she would like C.N. placed with her. (1CT 27.)

On December 12, 2023, the social worker spoke with the paternal grandmother who said she did not recall any conversation with her attorney in June 2023. (1CT 27.) The paternal grandmother stated that she had contact with the father during the entirety of his dependency case with C.N. (1CT 27.) The paternal grandparents indicated they were aware that C.N. was removed from the parents and placed in foster care. (1CT 28.) The paternal grandparents thought that the plan was for reunification with the father and so did not request to be assessed for placement, even though they had contact with the Department and were aware that the child was in foster care with non-relatives. (1CT 28.)

On January 22, 2024, the paternal grandparents filed a section 388 petition seeking to allow the paternal grandparents to be considered for adoption and to allow the paternal grandparents to have extended visits or custody. (1CT 5.) As to change of circumstances, the petition alleged that the grandparents were "never advised that minor might be adopted or given an opportunity to be considered for adoption." (1CT 5.) As to best interest, the petition alleged that the minor "has been in grandparents home and having a continued relationship would benefit minor regarding family history." (1CT 5.)

The paternal grandparents stated that they visited C.N. prior to the Departments' involvement and had periodic visits

Document received by the CA 4th District Court of Appeal Division 2.

with the child after the petition was filed. (1CT 7.) They spoke with the social worker regarding visitation but was told that C.N. could not be placed with them. (1CT 7.) They were told that the plan was to return the child to the parents. (1CT 7.) They said they were never notified of any court proceeding regarding relative placement or adoption. (1CT 7.) They felt that the child should be able to have a relationship with them, because that would allow her to know her family history. (1CT 7.) They want to be considered for adoption, and if that is not possible, to have regular and extended visits. (1CT 7.)

The trial court set the paternal grandparents' section 388 petition for hearing. (1CT 20.)

The Department spoke again with the prospective adoptive parents who said that they are comfortable starting with phone calls and video calls, but are worried about in-person visits with the paternal grandparents, because they felt the biological father would be around and he is a violent person. (1CT 27.) They did not feel that the in-person visits would be safe for the child. (1CT 28.)

The Department recommended the court deny the section 388 petition filed by the paternal grandparents. (1CT 29.) The Department explained that father was asked about his preferences for placement, but he declined talking about placement for the child. (1CT 28.) C.N. has been in her current adoptive placement since December 22, 2021. (1CT 29.) C.N. has developed a strong attachment to her caregivers and their family. (1CT 29.) Her caregivers have met the child's needs and she has

Document received by the CA 4th District Court of Appeal Division 2.

been "thriving in social-emotional, cognitive, and physical development." (1CT 29.)

At the hearing on the section 388 petition on February 20, 2024, the paternal grandparents were present with their counsel. (1CT 37.)

The deputy county counsel stated that there was a placement hearing held in this case on April 12, 2022, in which the Department reported that it had reached out to father and he said he did not have any relatives to provide for consideration of placement. (1RT 6.) Father told the Department that he and the paternal grandmother planned to obtain an apartment together, so he did not want her to be considered for placement. (1RT 6.) Father indicated that there were no appropriate family members. (1RT 6.)

The deputy county counsel argued that counsel for the paternal grandparents is asking to go back and find that the previous court "negligently or wrongfully" found that the Department made due diligence in investigating relatives for placement. (1RT 6.) The deputy county counsel argued that the Department complied with due diligence in locating relatives. (1RT 7.)

The trial court stated that procedurally "that finding was previously made. I don't think that's the—that this Court could go back and modify that finding that that Court did..." (1RT 7.)

Counsel for the minor argued that the grandparents were aware of the child welfare case and never applied for placement. (1RT 8.) Counsel argued they do not have standing. (1RT 8.)

Document received by the CA 4th District Court of Appeal Division 2.

Counsel for the paternal grandparents stated that, as an offer of proof, that the paternal grandparents indicate that they were never contacted by the Department regarding any placement and they visited the child. (1RT 7.) When they visited, they signed in with an address and phone number, so the Department was aware of where they were located. (1RT 8.) The paternal grandparents were aware there was a case, but no one advised them they could apply for placement. (1RT 9.) The paternal grandparents thought that the Appellate Court might deal with the issue after the court terminated parental rights and it appears that they did not. (1RT 8.)  Therefore, counsel asked the trial court to consider them for placement. (1RT 8.) In the alternative, counsel asked the court to consider them for placement if there is a later need for a change in placement. (1RT 8.)

The trial court denied the section 388 petition, finding that the requested change is not in the child's best interest. (1RT 9.) The court found that the minor has been in the current placement for two years, is very stable and is doing well. (1RT 9.)

The court stated that the issue of standing is not completely clear, but found that it is important for children to maintain a family relationship. (1RT 10.) The court ordered the Department to assist the paternal grandparents with potential visitation and try to facilitate visits. (1CT 37-38.) The court stated that it was not ordering the caregivers to allow visitation. (1CT 38.) The court also ordered that if the adoption with the

Document received by the CA 4th District Court of Appeal Division 2.

current caregivers falls through, the Department is to contact the paternal grandparents. (1CT 38.)

On March 11, 2024, the paternal grandparents filed a Notice of Appeal of the trial court's orders on February 20, 2024. (1CT 39-40.)

## II.

## ARGUMENT

### A.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE PATERNAL GRANDPARENTS' SECTION 388 PETITION

Appellants argue that the trial court abused its discretion in denying their section 388 petition. (Appellants' Opening Brief ("AOB"), pp. 13-15.) They contend that they provided the court with new evidence that the Department did not comply with sections 309, 358 and the California Rules of Court, rule 5.534(b)(3) in investigating, identifying and locating relatives of the child, and that their request was in the child's best interest. (AOB, pp. 11-15.)

However, the trial court did not abuse its discretion in denying the section 388 petition, because the appeal is untimely. Further, the paternal grandparents were aware of the court proceedings and did not request placement until after parental rights were terminated, the evidence in their petition was successfully rebutted by the Department, and their request for a

59

Document received by the CA 4th District Court of Appeal Division 2.

change in placement was not in the child's best interest. For these reasons, the trial court should be affirmed.

The standard of review is the abuse of discretion standard. "The petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion. (*Stephanie M.,* at p. 318, 27 Cal.Rptr.2d 595, 867 P.2d 706.)" (*In re S.J.* (2008) 167 Cal.App.4th 953, 959-960.) The Supreme Court has articulated the abuse of discretion standard in *Stephanie M.* as follows:

> "As one court has stated, when a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.] And we have recently warned: 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

"The denial of a section 388 motion rarely merits reversal as an abuse of discretion. [Citation.]" (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

Under section 388, an interested person may request that the court change, modify, or set aside a previously made court order. (§ 388.) The person has the burden of proving the requested modification. (*In re S.J., supra,* 167 Cal.App.4th at p.

Document received by the CA 4th District Court of Appeal Division 2.

959.)  The person must show both that: 1) there is a change of circumstance or new evidence, and 2) the proposed change is in the child's best interests.  (§ 388; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved for other reason by *In re Caden C.* (2021) 11 Cal.5th 614, Fn. 5.)

As a preliminary matter, the appeal is untimely, because the paternal grandparents are appealing the trial court's dispositional findings and orders from November 2020. (AOB, pp. 13-15; 1CT 25.)

Under section 395, the dispositional order is an appealable judgment, and all subsequent orders are directly appealable without limitation except for post-1994 orders setting a section 366.26 hearing, which are subject to writ review.  (§ 395; *In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.)  "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order. [Citations.]"  (*In re Jesse W.*, *supra*, Cal.App.4th at p. 355.)

The Court in *Jesse W.* further stated,

> "In other words, 'A challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' [Citation.] The rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders.  [Citation.]"  (*Id.*)

Document received by the CA 4th District Court of Appeal Division 2.

"The Legislature has made known its desire not to allow the child's future to be held hostage to a postponed appeal." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1156.)

Normally, "a notice of appeal must be filed within 60 days after the rendition of the judgment or the making of the order being appealed." (Cal. Rules of Court, Rule 8.406(a)(1); *In re J.A.* (2019) 43 Cal.App.5th 49, 51 [4th Dist., Div. 2].)

Here, the paternal grandparents' appeal was filed more than three years after the trial court's November 2020 dispositional findings and is unjustifiably late. The trial court properly found on February 20, 2024, that the paternal grandparents' request was not procedurally appropriate, given that the due diligence findings were old and made at a different stage of the proceeding. (1RT 7.)

In their petition, the paternal grandparents alleged that they did not receive notice of any court proceeding regarding relative placement or adoption and that the Department failed to comply with sections 309, 358, and the California Rules of Court, rules 5.534(b)(3) and 5.695(e). (1CT 7.); (AOB, pp. 13-15.) However, these sections and provisions relate to findings and orders made no later than the disposition hearing, which, in this case, occurred in November 2020—more than three years prior to the hearing from which this appeal was taken. (Cal. Rules of Court, rule 5.695(e); § 309(e)(3)(A); § 358(b)(2).) No appeal was taken from the dispositional hearing. Appellants' argument that the Department violated these sections and provisions is too late, because the issue should have been raised in the trial court and

Document received by the CA 4th District Court of Appeal Division 2.

then on appeal from the dispositional order. (*In re A.K.* (2017) 12 Cal.App.5th 492, 501.)

Therefore, the paternal grandparents' present appeal is untimely and should be dismissed.

Assuming arguendo that the appeal is not untimely, the paternal grandparents' "new evidence" that the Department never notified them of any court proceeding regarding relative placement or adoption was successfully rebutted by the Department. (1CT 7, 28.) The paternal grandparents had contact with the father during the entirety of the dependency case with C.N. (1CT 26-27.) They were aware that the child was removed from the parents and placed in foster care. (1CT 28.) They thought the plan was for reunification with father and did not request to be assessed for placement, even though they had contact with the Department and were aware that the child was in foster care with non-relatives. (1CT 28.) Therefore, the evidence that the paternal grandparents state is "new" was rebutted by the Department. The paternal grandparents did not request placement of the child until after the termination of parental rights. (1CT 28.) They did not file the section 388 petition until after This Court did not address the issue on appeal from the termination of parental rights hearing. (1RT 8; 1CT 28.) Therefore, the Department successfully rebutted the paternal grandparents' evidence. (1CT 26-27.)

Moreover, the Department complied with both section 309 and the related section 358. (AOB, pp. 13-15.) Section 309, subdivision (e)(1) provides, in relevant part, "If the child is

Document received by the CA 4th District Court of Appeal Division 2.

removed, the social worker shall conduct, within 30 days, an investigation in order to identify and locate all grandparents, parents of a sibling of the child, if the parent has legal custody of the sibling, adult siblings, and other adult relatives of the child .... The social worker shall provide to all adult relatives who are located, except when that relative's history of family or domestic violence makes notification inappropriate, within 30 days of removal of the child, written notification and shall also, whenever appropriate, provide oral notification, in person or by telephone, of all the following information." (§ 309, subd. (e)(1); § 358, subd. (b).) The appropriate standard of review on this issue is abuse of discretion because section 309 involves relative placement issues. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

The Department used due diligence in investigating potential relatives for C.N. The Department inquired of the parents about their placement preferences several times throughout this case and father provided none of his relatives' contact information. (1CT 25-26.) While the paternal grandparents state that they visited the child during the dependency, there is no evidence that the Department had their contact information. (1CT 7.) The only mention of that is in the offer of proof by their counsel. (1RT 7-8.)  An offer of proof is not evidence. (*In re Mark C.* (1992) 7 Cal.App.4th 433, 445; *People v. Foss* (2007) 155 Cal.App.4th 113, 127.) No additional evidence was presented at the section 388 hearing. (1RT 6-9.)

The paternal grandmother acknowledged that they had contact with father during the entirety of his dependency case.

Document received by the CA 4th District Court of Appeal Division 2.

(1CT 27.) They knew the child was in foster care. (1CT 28.) They thought the plan was reunification with father and did not request to be assessed for placement, even though they had contact with the Department and were aware that the child was in foster care with non-relatives. (1CT 28.) The paternal grandparents were waiting for the resolution of father's reunification case and then of the appeal of the order terminating parental rights, before stepping in to request placement. (1RT 8.); (1CT 28.) Therefore, the Department complied with sections 309 and 358, but father's relatives were not interested in taking placement until parental rights were terminated.

Appellants argue that their request to place the child in their custody is in the child's best interest. (AOB, p. 17.) They assert that they visited the child prior to the Department's involvement and had periodic visits after the case was filed. (1CT 7.)

On February 20, 2024, the trial court found that the section 388 petition is not in the best interest of the child. (1CT 37.) The court found that the minor has been in her current placement for two years, is very stable and is doing well. (1RT 9.) The trial court did not abuse its discretion.

C.N. is four years old and has been placed with her current caregivers since December 22, 2021—nearly three years. (1CT 25-26.) The child has developed a strong attachment to her caregivers and their family. (1CT 29.) Her prospective adoptive parents have met her needs and she has been "thriving in social-emotional, cognitive, and physical development." (1CT 29.)

Document received by the CA 4th District Court of Appeal Division 2.

The child does not have a relationship with the paternal grandparents.  The trial court granted a hearing on the section 388 petition and, at the hearing, the paternal grandparents presented no evidence in support of their petition. (1CT 20, 37.) Counsel presented an offer of proof, but that is not evidence. (1RT 7-9.) Unsworn statements of counsel at the trial court are not evidence. (*People v. Superior Court* (*Crook*) (1978) 83 Cal.App.3d 335, 341.) The court heard argument from the paternal grandparents' counsel as well as the Department's and minor's counsel and then denied the petition. (1RT 6-9.)

The trial court did not abuse its discretion of the section 388 petition after finding that the request is not in the child's best interest. The child is thriving in her current home, is very stable and has no relationship with the paternal grandparents.

Appellants contend that the change in placement would benefit the child, because it would allow her to have her family's history. (AOB, p. 16.)

 "By its plain language, subdivision (k) of section 366.26 overrides section 361.3 when it comes to placements for *adoption*." (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 285, emphasis in original.)  The only person entitled to a placement preference is the foster parent who has cared for the child.  (§ 366.26, subdivision (k).)

Under section 366.26, subdivision (k), the foster parents here had a preference for placement.  (§ 366.26, subdivision (k).) Father's reunification services had been terminated on March 22, 2022. (1CT 26.) His parental rights were terminated on January

Document received by the CA 4th District Court of Appeal Division 2.

20, 2023. (1CT 26.) The child's permanent plan was selected as adoption. (1CT 26.) Because the relative placement preference did not apply at the time the February 20, 2024 hearing occurred, it cannot be relied upon on appeal. No new placement was needed as the caregivers still wish to adopt the child. (1CT 27-29.)

Nonetheless, even if This Court determines that the relative placement preference applied in this matter, the record shows that the trial court did not abuse its discretion in denying the request to place C.N. with the paternal grandparents.

Changing placements was not in the minor's best interest. The minor has lived in the same home since December 2021 when the child was a year old. (1CT 25.) The child is thriving in her placement and her caregivers meet her needs. (1CT 29.) For these reasons as well, the trial court did not abuse its discretion in denying the section 388 petition.

The overriding concern of dependency proceedings is not the interest of extended family members but the interest of the child. (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.) The evidence in the record shows that it was not in C.N.'s best interests to be placed with the grandparents. The trial court did not abuse its discretion in denying the request to place C.N. with her paternal grandparents. The trial court should be affirmed.

/ / /

/ / /

/ / /

Document received by the CA 4th District Court of Appeal Division 2.

## III.

## CONCLUSION

Based on the foregoing, Respondent respectfully requests that the trial court's findings and orders be sustained on appeal.

Respectfully submitted,
MINH C. TRAN
County Counsel


Dated: <u>August 21, 2024</u>   By: <u>*Prabhath Shettigar*</u>
PRABHATH SHETTIGAR
220352
Deputy County Counsel


## IV.

## CERTIFICATE OF WORD COUNT FOR BRIEF

By my signature below, I certify that this brief consists of 3,746 words, including footnotes, as counted by the computer program used to prepare this brief.


<u>*Prabhath Shettigar*</u>
PRABHATH SHETTIGAR,
Declarant

ocument received by the CA 4th District Court of Appeal Division 2.

EXHIBIT 3
Court Opinion E083475

Case 5:25-cv-01763    Document 1    Filed 07/11/25    Page 79 of 97   Page ID #:79

Court of Appeal Fourth Appellate District Division Two
Brandon L. Henson, Clerk/Executive Officer
Electronically FILED on 12/12/2024 by L. De La Torre, Deputy Clerk

*See Concurring Opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

> California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.N., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E083475 |
| Plaintiff and Respondent, | (Super. Ct. No. INJ1900247) |
| v. | OPINION |
| S.N., | |
| Defendant; | |
| S.N. et al., | |
| Appellants. | |

APPEAL from the Superior Court of Riverside County.  Elizabeth Tucker, Commissioner.  Affirmed.

Lauren K. Johnson for Appellants.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Prabhath Shettigar, Deputy County Counsels, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Appellants, S.N. (paternal grandfather (PGF)) and C.B.N. (paternal grandmother) (PGM)), appeal from the juvenile court's order denying their Welfare and Institutions Code[1] section 388 petition to change the custody order as to their four-year-old granddaughter C.N.  The grandparents contend the juvenile court abused its discretion in denying their section 388 petition because they had made a prima facie showing of changed circumstances and best interest of the child.[2]  As to changed circumstances, the grandparents argue the Riverside County Department of Public Social Services (DPSS) failed to use due diligence in locating and notifying them of the proceedings pursuant to section 309.  For the reasons explained, we affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2020, the Riverside County Department of Public Social Services (DPSS) filed an out of custody petition pursuant to section 300 on behalf of then two-month-old C.N.  On November 3, 2020, Father stated that he did not wish to discuss placement of C.N. at that time and did not provide DPSS with any contact information

---

[1]  All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]  The parents, S.A. (Mother) and S.N. (Father), are not parties to this appeal.

for the paternal grandparents or any other relatives to be considered for placement of C.N.

On November 10, 2020, C.N. was detained from both parents and placed with a relative or non-relative extended family member.  At the contested jurisdiction and disposition hearing on December 23, 2020, the juvenile court found true the allegations in the petition, adjudged C.N. a dependent of the court, ordered family reunification services to Father, and denied services to Mother.

On April 20, 2021, C.N. was moved to a certified foster family.  In May 2021, Father stated he would like C.N. placed with PGM if he were unable to reunify with her, but he did not provide any contact information for PGM.  Father's services were continued for another six months on June 8, 2021.

On December 22, 2021, C.N. was placed in her current foster home.

On March 10, 2022, the juvenile court terminated Father's reunification services at the contested 12-month review hearing.  On March 22, 2022, Father was interviewed for an upcoming hearing regarding relative placement issues.  Father reported that he had no relatives to be considered for placement of the child as he and PGM planned to move into a home together.

On April 12, 2022, the hearing regarding relative placement issues took place. The paternal grandparents were not mentioned in the report as being contacted as a possible placement for C.N. as their contact information was not provided by Father.  In addition, there was no record that the paternal grandparents requested placement of C.N.

On January 20, 2023, at the section 366.26 selection and implementation hearing, the juvenile court terminated parental rights and designated C.N.'s current caregivers as the prospective adoptive parents.[3]

On June 1, 2023, counsel for the paternal grandparents asked DPSS about placement and visitation rights for the grandparents. DPSS's social worker informed counsel that she had spoken with the prospective adoptive parents and that the prospective adoptive parents were fine allowing some contact, but they were not comfortable with in-person visits until the adoption was finalized and they were more comfortable with allowing visits with the grandparents. Counsel for the paternal grandparents stated that this was not sufficient, given that the grandparents wanted placement of the child. Counsel also stated he would discuss the situation with the paternal grandparents.

On December 11 and 12, 2023, PGM left messages with the social worker stating that she would like C.N. placed with her. On December 12, 2023, the social worker spoke with PGM and informed her regarding her conversation with her counsel on June 1, 2023. PGM said that she did not recall any conversation with her attorney in June 2023. PGM also stated that she had contact with Father during the entirety of his dependency case with C.N. The paternal grandparents indicated they were aware that

---

[3]    Father filed a notice of appeal from the order terminating parental rights. Father's appellate counsel stated she did not identify any issues to raise and advised Father of the same. Father did not file a supplemental brief. On January 3, 2024, we issued an order dismissing the appeal as abandoned.

C.N. was removed from the parents and placed in foster care. The paternal grandparents thought that the plan was for reunification with Father, and thus they did not request to be assessed for placement, even though they had contact with DPSS and were aware C.N. was in foster care with non-relatives.

On January 22, 2024, the paternal grandparents filed a section 388 petition seeking to allow the grandparents to be considered for adoption and to allow them to have extended visits or custody. As to change of circumstances, the petition alleged that the grandparents were "never advised that minor might be adopted or given an opportunity to be considered for adoption." As to best interest of the child, the petition alleged that the child "has been in grandparents['] home and having a continued relationship would benefit minor regarding family history." In support, the paternal grandparents attached their statement, which was not signed under penalty of perjury, and photographs of PGM with C.N. They declared that they visited C.N. prior to DPSS's involvement and had periodic visits with the child after the petition was filed. They spoke with the social worker regarding visitation but were told that C.N. could not be placed with them and that the plan was to return the child to the parents. The paternal grandparents also stated that they were never notified of any court proceeding regarding relative placement or adoption. They believed the child should be able to have a relationship with them as that would allow her to know her family history. They desired to be considered for adoption, and if that was not possible, to have regular and extended visits with C.N.

The trial court set the paternal grandparents' section 388 petition for a hearing.

The social worker spoke with the prospective adoptive parents regarding the paternal grandparents' request for visits with C.N.  The prospective adoptive parents stated that they were comfortable with the grandparents starting with phone call and video call visits, but were worried about in-person visits with the paternal grandparents, because they felt Father would be around and he was a violent person.  The prospective adoptive parents also believed in-person visits would not be safe for the child.  The social worker noted that the prospective adoptive parents were "open to contact with the paternal grandparents, as long as it will be safe and beneficial to C[.N.]." and that they wished "to start slow and progress with a trusting relationship."

DPSS recommended the court deny the paternal grandparents' section 388 petition.  DPSS explained that although the grandparents were aware C.N. was in foster care with non-relatives and had contact with DPSS, they never requested to be assessed for placement even after they knew Father's services had been terminated.  In addition, Father was asked about his preferences for placement in November 2020, but he declined talking about placement for the child.  In May 2021, Father indicated that he wished for C.N. to be placed with PGM, but in March 2022, Father stated that he had no relatives to consider for placement and that he and PGM were moving in together.  DPSS further noted that C.N. had been in her current adoptive placement since December 22, 2021, and had developed a strong attachment to her caregivers and their family.  C.N.'s caregivers had met the child's needs and she had been "thriving in social-emotional, cognitive, and physical development."

At the hearing on the section 388 petition on February 20, 2024, the paternal grandparents were present with their counsel.  DPSS's counsel stated that there was a placement hearing held in this case on April 12, 2022, in which DPSS reported that it had reached out to Father and he said he did not have any relatives to provide for consideration of placement.  Father informed DPSS that he and PGM planned to obtain an apartment together, so he did not want her to be considered for placement.  Father also indicated that there were no appropriate family members to consider for placement of the child.  DPSS's counsel noted that the paternal grandparents' counsel was asking to go back and find that the previous court "negligently or wrongfully" found DPSS made due diligence in investigating relatives for placement.  DPSS's counsel also asserted that DPSS complied with due diligence in locating relatives.  The trial court stated that procedurally "that finding was previously made.  I don't think that's the -- that this Court could go back and modify that finding that that Court did. . . ."

The paternal grandparents' counsel stated, as an offer of proof, that the paternal grandparents indicated they were never contacted by DPSS regarding any placement and they visited the child.  When they visited, they signed in with an address and phone number, so DPSS was aware of where they were located.  Counsel also argued that the paternal grandparents were aware there was a case, but no one advised them they could apply for placement.  The grandparents thought that the appellate court might deal with the issue after the court terminated parental rights and it appears that they did not.  Counsel, therefore, asked the juvenile court to consider the paternal grandparents for

placement.  In the alternative, counsel asked the court to consider them for placement if there was a later need for a change in placement.  The child's counsel argued that the paternal grandparents were aware of the child welfare case and never applied for placement.  The child's counsel also noted that the paternal grandparents did not have standing to bring the section 388 petition.

The trial court denied the section 388 petition, finding that the requested change was not in the child's best interest.  The court found that C.N. had been in her current placement for two years, was very stable, and was doing well.  The court stated that the issue of standing was not completely clear, but found that it was important for children to maintain a family relationship.  The court ordered DPSS to assist the paternal grandparents with potential visitation and try to facilitate visits, but did not order the caregivers to "actually do visitation."  The court also ordered that if the adoption with the current caregivers fell through, DPSS was to contact the paternal grandparents.

On March 11, 2024, the paternal grandparents filed a notice of appeal from the juvenile court's February 20, 2024 order denying their section 388 petition.

III.

DISCUSSION

The paternal grandparents argue the juvenile court abused its discretion in denying their section 388 petition because they had made a prima facie showing of changed circumstances and best interest of the child.  As to changed circumstances, the grandparents contend DPSS did not use due diligence in locating and notifying them of

8
77

the proceedings pursuant to section 309 and California Rules of Court, rules 5.534(b)(3) and 5.695(e)(2).  As to best interest of the child, the grandparents claim C.N. had lived with them, they had visited C.N. prior to DPSS's involvement, they had a relationship with C.N., and having C.N. in their placement would allow her to have her family history.

Preliminarily, to the extent the paternal grandparents are challenging the placement order, we find that contention moot.  The juvenile court's termination of parental rights rendered moot challenges to the request for placement.  "An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief."  (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.)  "We decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether our decision would affect the outcome in a subsequent proceeding.  [Citations.]" (*Ibid.*; see *In re N.S.* (2016) 245 Cal.App.4th 53, 58-59.)

"An order of the dependency court terminating parental rights may be modified only by a timely direct appeal from the order.  (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1161.)  It is not subject to collateral attack, such as by petition for writ of habeas corpus.  (*Ibid.*)"  (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1316.)  Once the order becomes final, by lack of an appeal or affirmance on appeal, an appellate court lacks jurisdiction to modify or vacate the order.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 407, fn. 4; *Jessica K.*, *supra*, at p. 1316.)

Here, the paternal grandparents timely appealed from the order denying their section 388 petition seeking custody or placement of the child and extended visits. But the juvenile court had terminated parental rights and freed the child for adoption and, although Father timely appealed, his appeal was dismissed as abandoned. The time to appeal from the termination orders has long since expired. The orders terminating parental rights and freeing the child for adoption are now final. (*In re Carrie M.* (2001) 90 Cal.App.4th 530, 533-534 ["An order is final when the time for appeal has expired and no timely appeal has been filed or the order has been appealed and affirmed."].) DPSS, moreover, no longer must give preference to relatives when deciding where to place C.N. (See *Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 741; *In re K.L.* (2016) 248 Cal.App.4th 52, 66; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1031.) As a result, even if we found C.N. should have been placed with the paternal grandparents in the past, she would nevertheless remain in her current placement. A reversal of the juvenile court's orders, therefore, would be an idle act, offering no meaningful relief. The paternal grandparents' challenges to these orders are moot.

Even if the paternal grandparents' challenges to the denial of their section 388 petition and request for custody and visitation were not moot, we would reject them on the merits.

Section 388 allows a parent or other interested person to petition the juvenile court to change, modify or set aside any previous order in the case based on grounds of "change of circumstance or new evidence."  (§ 388, subd. (a)(1).)  "If it appears that the best interests of the child . . . may be promoted by the proposed change of order," the court shall order that a hearing be held on the petition.  (§ 388, subd. (d).)

On receipt of a section 388 petition, the juvenile court may either summarily deny the petition, or order a hearing if the petitioners make a prima facie showing in their favor.  (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.)  "'There are two parts to the prima facie showing: The [petitioners] must demonstrate (1) a genuine change of circumstances or new evidence, and . . . (2) [that] revoking the previous order would be in the best interests of the child[].'"  (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079; see also *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529; Cal. Rules of Court, rules 5.570(d)(1) & 5.570(d)(2).)

The juvenile court's denial of a section 388 petition will not be disturbed unless the juvenile court abused its discretion by making a decision that exceeded the bounds of reason.  (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1116-1117; see also *In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445 ["'The denial of a section 388 motion rarely merits reversal as an abuse of discretion'"].)  ""'When two or more inferences can reasonably be

deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]' [Citations.]" (*In re A.R.*, *supra*, at p. 1117.)

Under the applicable standard of review, we cannot say the juvenile court abused its discretion by denying the parental grandparents' section 388 petition.

"Section 309, subdivision (e)(1) provides that, if a child is removed from parental custody, the social worker must conduct an investigation in order to identify and locate all adult relatives of the child. The social worker must use 'due diligence' in investigating the names and locations of these relatives. ([§ 309], subd. (e)(3).) '[A]dult relatives' include all grandparents, adult relatives who are 'suggested by the parents'. . . .'" (*In re K.B.* (2023) 97 Cal.App.5th 689, 697 (*K.B.*).)

"Section 309, subdivision (e)(1)(A) requires the social worker to provide written notification within 30 days of removal to all adult relatives who are located (with certain exceptions not applicable here) that the child has been removed from parental custody. Section 309, subdivision (e)(1)(B) requires that the notice include '[a]n explanation of the various options to participate in the care and placement of the child and support for the child's family, including any options that may be lost by failing to respond.' The social worker must provide written notification as well as 'oral notification, in person or by telephone,' whenever appropriate." (*K.B.*, *supra*, 97 Cal.App.5th at p. 697.)

"In addition to the notice set forth in . . . section 309, . . . California Rules of Court, rule 5.534(b)(3) . . . requires the social worker to give any located relative a copy of the 'Important Information for Relatives' document as distributed in the State Department of Social Services All County Letter No. 09-86, as well as Judicial Council Forms, form JV-285 (Relative Information) and form JV-287 (Confidential Information). Among other things, form JV-285 asks relatives to identify ways in which they may want to help the child, parents, or social worker, and to provide contact information for other relatives who might be able to help the child." (*K.B.*, *supra*, 97 Cal.App.5th at p. 697.)

"Section 358, subdivision (b)(2) provides that, if the child is removed from parental custody at the time of disposition, the court 'shall make a finding as to whether the social worker has exercised due diligence in conducting the investigation, as required pursuant to paragraph (1) of subdivision (e) of [s]ection 309, to identify, locate, and notify the child's relatives.'" (*K.B.*, *supra*, 97 Cal.App.5th at pp. 697-698.) The rule does not require postponing disposition or changing placement because the social worker's relative-finding efforts have been inadequate.

In this case, initially, we conclude, the paternal grandparents have waived or forfeited their contentions on appeal regarding section 309 error by not timely raising them below. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [appellate court will ordinarily not consider procedural defects or erroneous rulings where objection could have been, but was not, presented to trial court; it is unfair to trial judge and adverse party to take advantage of error on appeal when it could have been

corrected at trial]; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 [same]; cf. *In re Anthony P.* (1995) 39 Cal.App.4th 635, 641-642 [appellant waived right to assert error regarding sibling visitation by not properly raising issue below]; *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412.)  Here, neither grandparent timely raised in the juvenile court DPSS's alleged section 309 error, thereby depriving DPSS and/or the court of the opportunity to address the alleged error and potentially take measures to cure it.

The record shows that the paternal grandparents had contact with Father during the entirety of the dependency case with C.N. and that the child was removed from the parents and placed in foster care.  They thought the plan was for reunification with Father and did not request to be assessed for placement, even though they had contact with DPSS and were aware C.N. was in foster care with non-relatives.  Even after Father's services were terminated, they did not request to be assessed for placement.  Yet, despite being aware of DPSS's alleged dilatory action under section 309, the paternal grandparents never raised that error at any of the subsequent hearings in the child's dependency case that occurred over the two-year period leading up to the February 2024 contested hearing on the section 388 petition.  By failing to timely raise DPSS's alleged section 309 error below, we conclude they have waived or forfeited any error and therefore cannot raise it on appeal.  (*Doers v. Golden Gate Bridge etc. Dist.*, *supra*, 23 Cal.3d at pp. 184-185; *In re Marriage of Hinman*, *supra*, 55 Cal.App.4th at p. 1002; *In re Anthony P.*, *supra*, 39 Cal.App.4th at pp. 641-642.)  Hence, we cannot say that the grandparents made a showing of changed circumstances or new evidence.

Even assuming the allegation constitutes changed circumstances or new evidence, the paternal grandparents have not established how the proposed modification would promote the child's best interest.  (See *In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 529.)  Certainly, the paternal grandparents had visited C.N. prior to DPSS's involvement and periodically thereafter.  But visits with C.N. are not determinative of the child's best interest.  C.N. is four years old and has been placed with her current caregivers since December 22, 2021, for nearly three years.  C.N. has developed a strong attachment to her caregivers and their family.  C.N.'s prospective adoptive parents have met her developmental needs and have provided her with stability and permanency.  C.N. has been thriving socially, emotionally, cognitively, and physically in her caregivers' care.  C.N. has been placed with her caregivers for a significant period of time such that her need for continuity and stability assumes an increasingly important role.  (See *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1506; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 616 [in assessing best interest of the child, "'a primary consideration'" is assuring stability and continuity].)  Moreover, the record does not indicate that C.N. has an emotional relationship with the paternal grandparents or that the paternal grandparents had provided for her needs.  At the hearing on the section 388 petition, the paternal grandparents presented no evidence in support of their claim that it was in C.N.'s best interest to grant their petition.  Thus, the juvenile court did not abuse its discretion by finding the child's best interest would not be served by the requested modification.

IV.

DISPOSITION

The juvenile court's order denying the paternal grandparents' section 388 petition

is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____
                                                                                    J.

I concur:


RAMIREZ _____
                              P. J.

[*In re C.N.*, E083475]

MENETREZ, J., concurring:

I do not believe that any part of this appeal is moot.  The termination of parental rights does not make us incapable of granting effective relief concerning the placement order—the paternal grandparents are requesting placement, and we could direct the juvenile court to order their granddaughter placed with them even though parental rights have been terminated.  I concur in the judgment, however, because I agree that the juvenile court did not abuse its discretion by determining that the requested relief would not be in the child's best interest.

MENETREZ
J.

EXHIBIT 4
Case Docket – California Supreme Court case S289206

# Appellate Courts Case Information



## Supreme Court

Change court

| Case Summary | Docket | Briefs |
| Disposition | Parties and Attorneys | Lower Court |

## Disposition

**IN RE C.N.**
**Division SF**
**Case Number S289206**

Only the following dispositions are displayed below: Orders Denying Petitions, Orders Granting Rehearing and Opinions. Go to the Docket Entries screen for information regarding orders granting review.

Case Citation:                    none

| Date | Description |
| --- | --- |
| 04/02/2025 | Petition for review denied |

**Click here** to request automatic e-mail notifications about this case.